UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 21-CR-57 (JPS)

JOVANTE L. CHAMPION,

Defendant.

---

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

---

The United States of America, by and through its attorneys, Erica J. Lounsberry and Katherine M. Halopka-Ivery, hereby respectfully responds in opposition to Jovante Champion's Motion for Compassionate Release.

## I. INTRODUCTION

Jovante L. Champion is currently serving a below-Guidelines sentence of 240 months' imprisonment following his convictions for sex trafficking by force, fraud, and coercion, sex trafficking of a child, interstate transportation for prostitution, and transportation of a minor with intent to engage in criminal sexual activity. *See* Dkt. 76, 77. He is presently incarcerated at Terre Haute United States Penitentiary, a high security facility in Indiana.[1] Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/; then search 'Find by Name' field for Jovante Champion (last accessed August 28, 2026).

---

[1] At the time he filed his motion for compassionate release, Champion was housed at Manchester Federal Correctional Institution, a medium security facility.

On July 14, 2026, Champion filed a motion asking that the Court grant him compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A) and the First Step Act of 2018. Dkt. 111, p. 1. On July 31, 2026, the Court ordered the government to respond. Dkt. 112.

None of Champion's arguments in support of his motion for compassionate release have any basis in fact or any legal merit. As such, the Court should deny Champion's request.

## II. BACKGROUND

### A. Criminal Conduct and Sentencing

On March 9, 2021, a grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment charging Champion with one count of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1); one count of interstate transportation for prostitution in violation of 18 U.S.C. § 2421(a); one count of sex trafficking of a child by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), (b)(2), and (c); and one count of transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). Dkt. 1. He was tried before a jury for these offenses in July 2022 and convicted of all counts. Dkt. 61.

At trial, the evidence the government presented showed that the defendant used his status in a Milwaukee gang known as "Everything Business" to recruit AV-1 (a 20-year-old woman) and JV-1 (a 16-year-old girl) to engage in commercial sex acts for his profit in Chicago, Nashville, Dallas, and San Antonio during the summer of 2019. The defendant transported the victims from state to state on Amtrak trains and Greyhound buses, variously posting online advertisements for them or requiring them to walk the "track," that is, to solicit customers for commercial sex dates by walking in an area known for the solicitation of prostitution. When the victims told the defendant that they did not want to perform commercial sex dates, violated any of the defendant's

rules, or complained about his treatment of them, the defendant used manipulation, threats, and physical violence to compel them to comply.

The evidence used to prove these charges consisted of more than 100 admitted exhibits, demonstratives and summaries, ranging from transportation, hotel and financial records, to text messages between Champion and the victims, to social media posts, photos, videos, and original rap recordings and lyrics showing Champion boasting about his criminal activities. *See* Dkt. 62 (Exhibit and Witness List). The government called both victims as witnesses, and they testified about their firsthand experiences with the defendant, including the lies he used to lure them in, the brutality he used to coerce them into engaging in commercial sex acts, and the coercive tactics he used to attempt to prevent them from returning home. The government also presented testimony from JV-1's mother, a housekeeping staff from a hotel in Tennessee, and law enforcement officers from Texas, all of whom interacted with the defendant and his victims during the relevant period. It further called an expert witness who educated the jury on the typical methods and practices of sex traffickers, the unique dynamics of gang-based sex trafficking, the psychology and impact of sex trafficking on its victims, and the reasons why sex trafficking victims may make somewhat counterintuitive decisions, such as staying with an abusive sex trafficker. And at the end of its case in chief, the government called one of the lead case agents to synthesize hundreds of records showing where the defendant and the victims traveled, slept, worked, and spent money on each day of the period charged.

Champion was sentenced at a hearing held on November 17, 2022, to a total of 240 months in prison followed by five years on supervised release and ordered to pay $7,860 in restitution to the two victims. Dkt. 77. This sentence was below what the Court had calculated as his advisory U.S. Sentencing Guidelines range of 292 to 365 months in prison. Dkt. 76. His current projected

release date is June 3, 2038. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/; then search 'Find by Name' field for Jovante Champion (last accessed August 28, 2026).

### B. Champion's Motion for Compassionate Release

Champion now asks this Court to release him immediately, less than halfway through his sentence. *See* Dkt. 111. Although he initially invokes 18 U.S.C. § 3582(c)(2) (a subsection wholly inapplicable here that permits courts to resentence defendants who received terms of imprisonment based on sentencing ranges that have since been lowered by the U.S. Sentencing Commission), he ultimately presents a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

In support of this motion, he advances five separate arguments. He first contends that his conviction was based upon what he calls "fundamentally flawed evidence." Second, he argues that his sentence included an improper ("constitutionally defective," in his words) minimum mandatory term of 15 years because the minor victim in his case was more than 14 years old. Third, he urges the Court to reconsider his sentence in light of the fact that he was relatively young at the time of the offense conduct. Fourth, he argues that his sentence is inappropriately disproportionate to that of other similarly situated defendants sentenced after the enactment of the First Step Act. Fifth, Champion asserts that the Court should consider his "remarkable rehabilitation" since the time of his sentencing.

Each of these arguments is legally barred. Four of the five impermissibly rehash arguments that were already presented at the time of his sentencing or impermissibly attempt to use compassionate release to attack the validity of his conviction. "The focus of the compassionate release framework is on "granting mercy rather than righting legal wrongs." *Fernandez v. United States*, 146 S. Ct. 1292, 1303 (2026). Legal challenges to a conviction or sentence must therefore be presented on direct appeal or in a *habeas corpus* collateral attack, not via motion for

compassionate release, as explained further below. *Id*. His fifth argument, meanwhile, is disallowed by an "express limitation imposed by Congress." *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (quoting 28 U.S.C. § 994(t)) ("'Rehabilitation alone shall not be considered an extraordinary and compelling reason' for early release.") Nevertheless, as explained below, these arguments also fail on their merits.

## III. DISCUSSION

### A. Applicable Law

Champion must meet three legal requirements to qualify for compassionate release. First, Champion must exhaust all avenues for administrative remedy before requesting directly moving for compassionate release from the Court. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, allows courts to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The grounds in the motion to BOP must have presented "the same or similar ground[s]" as the defendant is relying on in his motion to the Court. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

Second, Champion must show "extraordinary and compelling reasons warrant[ing] such a reduction[.]"[2] 18 U.S.C. § 3582(c)(1)(A)(i). Even though this is a pro se motion, as clarified by the November 2023 amendments to the United States Sentencing Guidelines, this finding must be consistent with the U.S. Sentencing Commission's policy statement as set forth in that section.

[2] The alternative to extraordinary and compelling circumstances is that the defendant is 70 years of age or older and has served at least 30 years on a sentence imposed under 18 U.S.C. § 3559(c) (mandatory life imprisonment). U.S.S.G. § 1B1.13(a)(1)(B). This provision does not apply here.

§ 1B1.13(a)(3); U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index 7, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. That policy statement defines "extraordinary and compelling reasons" as existing under one or more of the circumstances listed in subsection (b), including (1) a serious medical condition (such as a terminal illness), (2) the defendant's advanced age at the time of the motion, (3) certain family circumstances affecting the ability of the defendant's minor or disabled child, spouse or parent to receive care in the defendant's absence, (4) serious abuse suffered by the defendant while in custody, (5) a circumstance or combination of circumstances similar in gravity to the aforementioned, or (6) where the defendant received an unusually lengthy sentence, of which he has served at least 10 years, and a subsequent change in the law creates a gross disparity between the sentence imposed and the sentence the defendant would likely receive today in light of the change in the law.

Notably, none of the extraordinary and compelling circumstances in the policy statement relate to the defendant's underlying conviction. "[T]he Sentencing Commission has tied the availability of compassionate release to a defendant's personal circumstances." *Fernandez*, 146 S. Ct. at 1304 (2026) (citing U.S. Sent. Comm'n, Guidelines Manual App. C, Amdt. 698 (Nov. 2007)). "It has *never* said that the invalidity of a conviction qualifies as an 'extraordinary and compelling reason warranting' compassionate release." *Id*. (emphasis in original).

Third, even if the Court is satisfied that an extraordinary and compelling circumstance exists, it must also determine that the requested sentence reduction or release is warranted considering the characteristics of the defendant and the nature of the crime for which he is serving a sentence. As part of this determination, it must decide that the defendant "is not a danger" to

others or the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(a)(2). It must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). These familiar criteria include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence; (3) protect the public; and (4) provide the defendant with effective training, care, and/or treatment.

In general, defendants have the burden to show that they qualify for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted). Here, Champion does not meet his burden as to any of the three legal requirements.

**B. Exhaustion**

To begin, Champion has not exhausted all avenues for administrative remedy through the Bureau of Prisons. The Court should therefore deny his motion before reaching the merits of his arguments.

Title 28, Code of Federal Regulations, Section 571 subpart G provides the procedures Champion must follow to pursue compassionate release through the BOP before moving pro se for compassionate release. The process is initiated when an inmate submits a request to the warden at his facility via a form BP-9, which should receive a response within 20 days. *See* 28 C.F.R. §§ 542.14; 571.61(a). A denial of that request (or the passage of more than 30 days without a response from the warden), however, does not satisfy the exhaustion requirement of § 3582(c)(1)(A). Instead, there are two additional steps an inmate must take before he has

"exhausted *all* administrative rights *to appeal a failure of the Bureau of Prisons to bring the motion* on the defendant's behalf," as required by section 3582(c)(1)(A) (emphasis added).

When an inmate's initial request is denied by the warden, he receives a written notice and a statement of reasons for the denial, pursuant to 28 C.F.R. § 571.63(a). That notice also tells the inmate about step two in the process: that he may appeal the denial to the Regional Director within 20 days using a form BP-10. *See* 28 C.F.R. § 542.15. If the Regional Director denies the inmate's request, that denial brings the inmate to the third step of the process: appeal to the General Counsel using a form BP-11. *Id*.

According to the plain language of § 3582(c)(1)(A), unless and until the inmate pursues these appeals, he has not exhausted his administrative remedies. *United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021) ("[T]he defendant must first present his request for compassionate release to the warden *and* exhaust administrative appeal (if the request is denied)….) (emphasis added). And if the defendant has not exhausted his administrative remedies, the Court is compelled to deny the defendant's compassionate release motion. *Id*. at 782 (holding that the statute's prohibition on modification of a sentence without the defendant exhausting administrative rights to appeal is a "paradigmatic mandatory claim-processing rule").

The exhibits Champion has attached to his motion for compassionate release establish only that he has completed the first step of the BOP administrative remedy process by submitting an initial request to the warden. *See* Dkt. 111-1, p. 1-6. He wrote one request on November 19, 2025, which, though submitted as an ordinary "Inmate Request to Staff," was received on December 4, 2025, and interpreted by BOP as a request for compassionate release. *Id*. at p. 1. This request was subsequently denied by the Acting Warden at Manchester FCI on December 15, 2025. *Id*. at p. 3. Then, on January 20, 2026, Champion filed a new request for compassionate release with the

warden using a form BP-229(13), entitled 'Request for Administrative Remedy.' *Id*. at p. 2. On February 13, 2026, less than 30 days later, the warden denied this request in writing.[3] *Id*. at p. 4. The warden's response explained the reasons for the denial and informed Champion of his right to appeal that decision to the Regional Director for the Mid-Atlantic Regional Office within 20 days, consistent with 28 C.F.R. §§ 542.15 and 571.63(a). *Id*.

Champion has provided no evidence that he pursued such an appeal. *See* Dkt. 111-1. Moreover, the government obtained records from BOP showing Champion failed to appeal the warden's decision. BOP's records reflect only two administrative remedy requests from Champion, one of which is Champion's compassionate release motion dated January 23, 2026, that was denied February 1, 2026. *See* Attachment A to this Response, p. 2. There is no record of an appeal to the Regional Director (step two) or the General Counsel (step three). Champion has therefore failed to exhaust the available avenues for administrative remedy, as required by 18, U.S.C. § 3582(c)(1)(A), and his request must therefore be denied.

### C. Extraordinary and Compelling Circumstances

As summarized above, Champion advances several reasons why he believes the Court should release him. None of them present extraordinary or compelling circumstances as described in the U.S. Sentencing Commission's policy statement.

[3] Champion incorrectly asserts that this response was a denial was of his November/December 2025 request, however it is clearly a response to his January 2026 request because it references remedy ID 1266091-F1, which is found in the lower right corner of his January 2026 request. Dkt. 111-1, pp. 2, 4. The government is unsure why, on February 17, 2026, the Administrative Remedy Coordinator at Manchester FCI issued a letter stating that more time would be needed to respond to Champion's request (Dkt. 111-1, p. 5), however it is apparent from the records Champion submitted that the denial of that request had already been signed on February 13, 2026 (Dkt. 111-1, p. 4). The government notes that February 13, 2026 was a Friday and that Monday, February 16, 2026 was a federal holiday, so the Coordinator may not have been aware of the Warden's response until after the extension letter was issued.

### 1. Fundamentally Flawed Evidence Claim

Champion first claims that the evidence presented against him at trial was insufficient to sustain convictions for the four offenses the jury found him guilty of. More specifically, he claims that the government relied "almost entirely" on the testimony of a single law enforcement officer, that there was no evidence the victims were engaged in prostitution, that there were no photos or videos of him committing the crimes charged, that the victims' commercial sex ads were never linked to him, and that the government failed to present evidence of interstate transportation or of the use of force, fraud or coercion. Even if these perplexing and baseless claims were true, they cannot constitute an extraordinary and compelling reason to adjust his sentence.

"[T]he supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." *Fernandez*, 146 S. Ct. at 1302. This is because prisoners have another avenue—a *habeas corpus* action—to make such claims and therefore allowing them to use compassionate release as an alternate vehicle for that purpose would let them circumvent section 2255's strict time limits, numerical cap and other stringent requirements. *Id*. at 1301-02. "When, as here, a prisoner 'attacks the validity of his confinement' and 'seeks either immediate release from that confinement or the shortening of its duration,' his claim belongs under the umbrella of the postconviction statutes." *Id*. at 1305 (citing *Preiser v. Rodriguez*, 411 U.S. 475 489 (1973)). As Champion admits in his motion, he failed to timely file a *habeas* petition, and his motion to extend his time for filing (filed after the statutory period had already expired) was denied. Dkt. 111, p. 5. He cannot now evade the strictures of the statute and the court's order by arguing his *habeas* motion under the guise of a motion for compassionate release.

The case Champion cites to support his argument about his conviction, *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), is both inapposite and has been superseded by subsequent

regulation. At the time that opinion was issued, the U.S. Sentencing Commission had not yet issued any policy statement after the enactment of the First Step Act applying to pro se requests for compassionate release (as opposed to motions brought by BOP). *Id*. at 1180. The Seventh Circuit consequently found that there was no limitation on what courts could find constituted an "extraordinary and compelling reason" with respect to pro se filings. *Id*. Since that time, however, the U.S. Sentencing Commission has amended § 1B1.13 to clarify that the policy statement delimiting what constitutes "extraordinary and compelling" applies with equal force to motions filed by pro se defendants. § 1B1.13(a)(3). Furthermore, contrary to Champion's claims, *Gunn* never stood for the proposition that extraordinary and compelling circumstances exist "where the factual basis of a conviction is questionable or where the application of justice warrants reconsideration." *See* Dkt. 111, p. 16. Instead, that case concerned an argument that a 62-year-old defendant afraid of contracting COVID-19 in 2020 merited compassionate release. *See Gunn*, 980 F.3d at 1179. Thus, the holding of *Gunn* has no bearing on Champion's situation.

Additionally, Champion's claims about his trial are wholly unfounded. Simply put, they mischaracterize the entire proceedings from top to bottom. The law enforcement witness whom he complains the government rested nearly its entire case on—an officer from Dallas who witnessed the minor victim streetwalking—was a relatively minor witness in view of the comprehensive and powerful testimony given by the two victims, the government's educational expert witness, the minor victim's mother, the case agent who summarized the extensive records evidence, and others.

Evidence that the victims were engaged in commercial sex acts for Champion came both from their testimony and their text messages with Champion. *See* Sent. Hrg. Trans. pp. 5-6 (wherein this Court noted that the trial witnesses' testimony was corroborated by "Champion's own words in some of the phone calls and text messages and posts…"). While Champion may not

have been on camera selling his victims for sex, he recorded himself boasting about being on the road with his "hoes" and counting stacks of money. *See*, *e.g.*, Tr. Trans. pp. 119, 539, 515-16, 519-20, 546-549, 624-25. Jurors also both heard from the victims that Champion had posted their ads and saw his text messages to the victims confirming that he had done so and chastising them that they needed to get out there and make money. *See*, *e.g.*, Tr. Trans. pp. 91, 118-19, 127, 133-34, 153-54, 157-58, 264, 284, 290-91, 304-07.

Furthermore, though Champion says the government failed to present any evidence of interstate transportation, the opposite is true. The government produced such detailed records evidence of Champion's transportation and travel—demonstrating where he was at nearly every hour of every day during the six-week period charged (Tr. Trans. pp. 488-598)—that defense counsel, in closing, called the summary witness' testimony an "hours long, mind-numbing, soul-crushing marathon of computer data" (Tr. Trans. p. 713). And though he claims there was no evidence of force, fraud or coercion, the victims testified in graphic detail about Champion's false promises and lies, his beatings, his financial and reputational extortion and other coercive tactics, and his threats to abandon them far from home if they did not earn money for him from commercial sex. *See*, *e.g.*, Tr. Trans. pp. 88, 104, 143-46, 190, 194-96, 298, 302-03.

Thus, far from "rel[ying] entirely on assumption and hearsay," the government presented a mountain of direct evidence, that led the jury to convict. Therefore, even if sufficiency of the evidence at trial were a proper basis for a motion for compassionate release, it is all but inconceivable that it could present an extraordinary and compelling reason supporting Champion's release in this case.[4]

[4] Champion also makes fleeting references in this section of his motion to "evolving jurisprudence" demonstrating that "courts have increasingly scrutinized the application of 18 U.S.C. § 1591, particularly regarding the 'force, fraud, or coercion' elements and the adequacy of jury instructions.'" Dkt. 111, p. 17. He cites no cases to illustrate this

#### 2. Legally Impermissible Sentence Claim

Champion also argues that the Court erred by including a 15-year minimum mandatory term as part of his sentence on Counts One and Three (sex trafficking by force fraud or coercion) because, according to his reading of the statute, this penalty only applies where a victim "had a not attained the age of 14 years." This argument, like the preceding one, is an improper attack on the validity of his sentence rather than an appeal to his circumstances post-conviction and therefore cannot be considered an extraordinary and compelling circumstance warranting sentence modification.

More to the point, however, this argument is based on a misunderstanding of 18 U.S.C. § 1591(b)(1). That subsection, which reads as follows, provides the penalties applicable to two different forms of sex trafficking:

> (b) The punishment for an offense under subsection (a) is—
>
> (1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, **or** if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life….

(Emphasis added.) The disjunctive "or" phrasing shows that the 15-year minimum mandatory penalty applies equally in two separate factual scenarios: either where force, threats of force, fraud or coercion was used, *or* where the victim "had not attained the age of 14 years." *See also United States v. Freeman*, 2023 WL 7271077 at *3 (7th Cir. Nov. 3, 2023) ("[T]he plain language of § 1591(b) does not leave room for doubt that the same penalties apply whether someone traffics a minor or traffics an adult through force, fraud or coercion.").

alleged evolution, and the government is unaware of such a trend in the case law. In any event, this argument is irrelevant given that compassionate release is an improper vehicle for attacking the validity of a conviction.

As described in the indictment, Champion was charged in Count One with the first of these two forms of sex trafficking: trafficking that is "effected by means of force, threats of force, fraud or coercion." *See* Dkt. 1. Count Three, meanwhile, charged him with sex trafficking of a child *and* by force, fraud or coercion, triggering the same penalty. *See id*. The descriptions of these charges and the precise subsections charged are also reflected in the verdict forms and the judgment. Dkt. 61, 77. Under the plain language of the statute, because Champion was convicted of using force, threats of force, fraud and coercion to effectuate his trafficking of his victims, the 15-year minimum mandatory penalty was correctly applied to both counts regardless of the victims' ages.

**3. Champion's Age at the Time of the Offenses**

Champion next argues that this Court should grant him compassionate release because he was relatively young at the time of the offense conduct. In doing so, he once again improperly focuses on the underlying case instead of post-sentencing events. Modifying a sentence under compassionate release requires, at a minimum, a new development that "alters the sentencing calculus." *Fernandez*, 164 S. Ct. at 1307 (Sotomayor, J., concurring) (citing *Setser v. United States*, 566 U.S. 231, 242-43 (2012)). "Otherwise, district courts would have indefinite authority to revise sentences already imposed based on information and arguments that were previously considered and rejected." *Id*. at 1308 (Sotomayor, J., concurring). "[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021).

Champion's youth at the time of the offense was known by this Court and discussed at sentencing by defense counsel multiple times. *See* Sent. Hrg. Trans. pp. 9, 10, 13; Dkt. 70, p. 3. It therefore cannot constitute an extraordinary and compelling reason under the catch-all in the policy

statement in U.S. Sentencing Guidelines § 1B1.13(b)(5)—alone or in combination with the factual basis for his convictions.

While it is true that another provision of the policy statement references age, Champion misinterprets the types of circumstances where it applies. The second of the policy statement's six potential bases of finding extraordinary and compelling circumstances contemplates *advanced* age, not youth. It says that age is a consideration where "[t]he defendant (A) is at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Moreover, under the policy statement, age standing alone is not enough. In addition to being at least 65, a defendant arguing age as a basis for compassionate relief must also demonstrate that he is "experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his….term of imprisonment, whichever is less." *Id*.

Contrary to Champion's contention, therefore, this provision does not "underscore[] the relevance of age in assessing" a compassionate release motion (Dkt. 111, p. 21). Rather, it provides a precise set of criteria that Champion fails to meet. Champion is 35 years old, has no known or professed age-related health or mental health conditions, and has neither served 10 years nor 75 percent of his 20-year sentence. Champion therefore cannot qualify for relief under § 1B1.13(b)(2).

**4. Unwarranted Sentencing Disparities Argument**

Champion's next argument is that his sentence is disproportionately high compared to other comparable defendants who had the advantage of being sentenced after the enactment of the First Step Act. He writes, "Champion is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act…." Dkt. 111, p. 23.

What Champion fails to appreciate is that he *was* sentenced after the passage of the First Step Act. The First Step Act was signed into law on December 21, 2018. Champion was sentenced nearly four years later, on November 17, 2022. Dkt. 77. In its memorandum, the government recommended a below guidelines sentence of 20 years, based in large part on proportionality to the sentences of other sex trafficking defendants imposed by this Court, considering the relative numbers and ages of the victims, methods used, and criminal histories in each case. Dkt. 75, pp. 2, 16-17. Though the specific defendants the government referenced were sentenced prior to the First Step Act, the government requested that the Court sentence Champion between the bookends provided by their respective sentences of 18 years and 30 years in prison. *Id*.

Were the Court to reconsider Champion's sentence today in light of other sex trafficking sentences in this District since the enactment of the First Step Act—particularly those who took their cases to trial—Champion might be looking at an even greater sentence today. Sex trafficking defendants in the Eastern District of Wisconsin post-First Step Act who did not receive acceptance of responsibility credit have received sentences ranging from 20 years (*United States v. Montae D. Jacobs*, 2:22-CR-91 (LA)) to 45 years (*United States v. Samuel Spencer*; 2:21-CR-253 (PP); *United States v. Calvin C. Freeman*, 2:19-CR-103 (PP)). Even for those defendants who have accepted responsibility, this Court has sometimes imposed sentences greater than the one Champion received. *See*, *e.g.*, *United States v. Morrell D. Johnson*, 2:25-CR-48 (JPS) (sentenced to 262 months in prison after pleading guilty and receiving credit for acceptance of responsibility). Thus, even if the law allowed Champion to be resentenced, there is no basis to believe that the goal of proportionality would result in Champion's sentence being reduced.

### 5. Champion's Alleged Rehabilitation

Finally, Champion argues that he has undergone a "remarkable rehabilitation" while in custody that deserves to be rewarded with release. Rehabilitation alone, however, cannot constitute an extraordinary and compelling reason warranting early release. *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (citing 28 U.S.C. § 994(t)). Although Champion contends that rehabilitation in combination with other circumstances can support compassionate release, as described above, there are no other circumstances present in this case that the Court could consider in conjunction with his rehabilitation claim.

Further, Champion's record in custody does not demonstrate the "extraordinary degree of …. rehabilitation in prison" found in *Peoples*. *See* 41 F.4th at 840. Instead, the attachments included with Champion's motion point to an ongoing need for rehabilitation. Dkt. 111-2, pp. 2-3. Specifically, BOP's records show that as of April 25, 2025, Champion still required rehabilitation related to Anger/Hostility; Antisocial Peers; Basic Cognitive Skills; Finance/Poverty needs; Family and Parenting; and Trauma needs. *Id*. Moreover, Champion's score on the 'Male Custody Classification Form' completed July 22, 2025, and included as part of Exhibit 2 to his motion resulted in a recommendation that he moved from a medium to a high security facility (which appears to have been carried out since the filing of this motion). *Id*. at p. 5.

Moreover, while Champion claims his behavior in custody has been "exemplary," records received from BOP show that he was sanctioned for multiple disciplinary violations in 2023. *See* Attachment B. On May 23 and June 22, 2023, Champion violated the institution's phone policies by using another inmate's account and placing an unauthorized three-way call. *Id*. at p. 1 And on March 16 and March 18, 2023, Champion was found in a unit where he was unauthorized to be. *Id*. at p. 1-2. During the latter incident, he was found to have lied to staff concerning why he was

there. *Id.* While these incidents are now somewhat dated, they call into question whether Champion has been forthcoming about his conduct and the positive changes he claims to have been making ever since he first went into custody.

Finally, Champion's motion makes clear that he continues to deny culpability and refuse to accept responsibility for the crimes he committed, even after being found guilty at trial and having several years in custody to consider his behavior. This, too, suggests he is still danger to the community, as discussed further below.

For all of these reasons, Champion has failed to establish an extraordinary and compelling circumstance warranting his release.

**D. Dangerousness and the § 3553(a) Factors**

Because Champion has neither exhausted his administrative remedies nor presented an extraordinary and compelling reason for his release, the Court need not reach the question of whether release is warranted under the § 3553(a) factors. *See United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Even if it did, however, the Court would still be constrained to deny Champion's motion because the § 3553(a) factors "militate strongly against release."

Champion's sentence, when it was imposed, was clearly supported by all of the relevant § 3553(a) factors, especially the nature and circumstances of the offense, the need for the sentence imposed to provide just punishment and deterrence and to protect the public, the sentencing guideline range (the low end of which was more than four years higher than the sentence Champion received), and the need to avoid unwarranted sentence disparities. In pronouncing sentence, this Court emphasized the "incredibly serious, serious" nature of the problem of human trafficking in the United States today. Sent. Hrg. Trans. p. 21. The Court described Champion's crimes as "horrible, horrible, pernicious activities" that "affect those in our communities who are incredibly

vulnerable, particularly those who have not reached the age of majority." *Id.* at p. 22. The Court further found that the minimum mandatory sentence of 15 years in prison Champion was requesting would be insufficient to account for the "torment" inflicted on the victims who had to testify at trial due to his failure to accept responsibility, as well as disproportionately low compared to the sentences of other sex traffickers. *Id*. at p. 29. The Court also expressed its hope that a strong sentence in this case would serve the goal of general deterrence by providing a counterweight to the incentives of "financial gain, ego, or control" that motivate traffickers. *Id*. at p. 27.

All these factors remain vital considerations today. Champion points to his alleged personal growth and dedication to his family as evidence that he has changed while in custody. Dkt. 111, p. 29. Even assuming Champion has "used his time in prison productively," he "continues to challenge the jury's determination," calling into question whether he has truly been rehabilitated or the community would be safe with him in it. *See United States. v. O'Neill*, 735 F. Supp. 3d 994, 1035 (E.D. Wis. 2024), *aff'd*, No. 24-1977, 2026 WL 160942 (7th Cir. Jan. 21, 2026). A defendant's post-sentence efforts do not reduce the need for the original sentence to impose just punishment and deter others." *United States v. Thao*, No. 23-CR-169-WCG at 3. (E.D. Wis. August 14, 2026). Here, reducing Champion's sentence would unduly depreciate the seriousness of his offense and fail to achieve the penological goals of just punishment and deterrence.

Notably, at sentencing, Champion apologized profusely to his family for his separation from them and to the Court for being there on criminal charges. Sent. Hrg. Trans. p. 14. The only other "apology" he made was a lukewarm (at best), "I don't think anybody should be standing here and to be sentenced or judged negatively or so, and I would like to apologize to all who was hurt behind this ordeal, or whatever." *Id*. Not once did Champion acknowledge his victims, express remorse for his crimes, or show contrition. *See id*. Instead, he objected to many of the facts proven

at trial, as recited in the PSR (*id*. at p. 4) and repeatedly protested that the government had unfairly mischaracterized him (*id*. at pp. 14-18). In this regard, nothing appears to have changed in the last four years, as Champion's motion continues to deny the validity of his trial—to the point of wholly misrepresenting what the evidence against him consisted of. *See* Dkt. 111 pp. 15-18.

Champion's own conduct drove the sentence he received and that he still manifestly deserves. His motion fails to articulate how release well over a decade ahead of schedule—before even the minimum mandatory portion of his sentence has run—would appropriately reflect the seriousness of the offense, promote respect for the law, provide just punishment, create general or specific deterrence, or protect the public. The Court should therefore also deny Champion's motion for failure to adequately address the § 3553(a) factors.

## IV. CONCLUSION

Champion has failed to meet his burden to establish that he is eligible for compassionate release or that he merits it. The government therefore respectfully requests that the Court deny his motion.

Dated at Milwaukee, Wisconsin, this 28th of August, 2026.

Respectfully submitted,

By: /s/ Erica J. Lounsberry
ERICA J. LOUNSBERRY
Assistant United States Attorney
Email: erica.lounsberry@usdoj.gov
Florida Bar No. 86095

/s/ Katherine M. Halopka-Ivery
KATHERINE M. HALOPKA-IVERY
Assistant United States Attorney
Wisconsin Bar No. 1075311

Attorneys for Plaintiff

Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700